# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **RUTHERFORD JONES** | **CIVIL ACTION NO. 6:13-cv-00460** |
| **LA. DOC #310505** | |
| **VS.** | **SECTION P** |
| | **JUDGE RICHARD T. HAIK, SR.** |
| **WARDEN BURL CAIN** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Rutherford Jones, an inmate in the custody of Louisiana's Department of Corrections, filed this petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2254 on March 4, 2013. Petitioner attacks his conviction for distribution of cocaine, his subsequent adjudication as a fourth felony offender, and the sentence of life without benefit of parole imposed by the Sixteenth Judicial District Court, St. Mary Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE** on the merits pursuant to Rule 4 of the Rules Governing Section 2254 cases in the District Courts.

## *Background*

On August 18, 2009 petitioner was found guilty as charged of distribution of cocaine; on October 29, 2009 he was adjudicated a fourth felony offender and sentenced to serve life imprisonment without benefit of parole. [Doc. 1-1, p. 6] He appealed his conviction, adjudication, and sentence to the First Circuit Court of Appeals raising claims of insufficiency of the evidence of identification and trial court error in excusing a sworn juror. [Doc. 12-1, Exhibit

Z-1, pp. 2-15] On September 10, 2010 his conviction, adjudication, and sentence were affirmed in an unpublished opinion. Petitioner applied for reconsideration on September 24, 2010 [Doc. 12-1, Exhibit Z-2, pp. 16-19] and reconsideration was denied on October 29, 2010. *State of Louisiana v. Rutherford Jones,* 2010-0460, (La. App. 1 Cir. 9/10/2010), 46 So.3d 285, *rehearing denied* 10/29/2010.

On November 29, 2010 his attorney filed an application for writs in the Louisiana Supreme Court omitting argument on the sufficiency of evidence claim and raising only the juror issue. [Doc. 10-1, Exhibit A-1, pp. 2-15; Doc. 12-1, Exhibit Z-3, pp. 20-33] His application for writs was denied by the Louisiana Supreme Court on April 25, 2011. *State of Louisiana v. Rutherford Jones*, 2010-2640, (4/25/2011), 62 So.3d 82.

On March 22, 2012 petitioner filed an application for post-conviction relief in the Sixteenth Judicial District Court arguing the following claims for relief: (1) the trial court allowed a witness to testify to "a total case of mis-identification;" (2) the trial court erred in allowing a witness "to give false testimony with correction;" (3) trial court erred in allowing inadmissible hearsay and trial counsel was ineffective for failing to object; (4) ineffective assistance of counsel based on counsel's failure to call witnesses to testify on petitioner's behalf and failure to adequately investigate the case prior to trial.  [Doc. 1-1, p. 7; Doc. 10-1, Exhibits A-2 and A-3, pp. 16-63 and 64-65; Doc. 12-1, Exhibit Z-4, pp. 34-80] The State filed procedural objections, a motion to dismiss, a motion for summary disposition, and an answer to the application for post-conviction relief. [Doc. 12-1, Exhibit Z-5, pp. 81-94]  On April 26, 2012 the trial court granted the State's motion to dismiss and ordered the dismissal of petitioner's application for post-conviction relief "on procedural grounds and ... on the merits." [Doc. 10-1,

2

Exhibit A-4, pp. 66-67; Doc. 12-1, Exhibit Z-5, p. 95] On May 17, 2012 the application was again denied by the trial court, this time, without comment. [Doc. 10-1, Exhibit A-4, p. 68; Doc. 12-1, Exhibit Z-5, p. 96]

His application for writs [Doc. 10-1, Exhibit A-5, pp. 69-100; Doc. 12-1, Exhibit Z-6, pp. 97-128] was denied without comment by the First Circuit Court of Appeals on August 13, 2012. [*State of Louisiana v. Rutherford Jones*, 2012-KW-1036 (La. App. 1 Cir. 8/13/2012); Doc. 12-1, Exhibit Z-6, p. 129]

On September 5, 2012 he submitted a truncated application for writs to the Louisiana Supreme Court which invited the Court to "... consider the merits of his claims presented in his Application for Post Conviction Relief..." but which, while it recited four writ grant considerations,[1] otherwise failed to articulate any claims for relief. He apparently attached a copy of the application for post-conviction relief to the pleading intending its use as his writ

---

[1] Petitioner articulated the following "Writ Grant Considerations" –

"(1) The decision of the First Circuit Court of Appeal conflicts with the decision of this court and of the United States Supreme Court with respect to the issue of misidentification. *S ee Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381-82, 34 L.Ed.2d 401 (1972).
(2) The decision of the First Circuit Court of Appeal conflicts with the decision of this court and of the United States Supreme Court with respect to the State's use of false testimony. *See Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 342 (1935); *Giglio v. United States*, 405 U.S. 140, 153, 92 S.Ct. 763, 766 (1972); Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177 (1959).
(3) The First Circuit Court of Appeal has unreasonably applied the standards set forth by this court and the United States Supreme Court with respect to petitioner's claims that he was denied the effective assistance of counsel. See U.S. Sixth Amendment; La. Const. Art. I, §13; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State ex rel. Busby v. Butler*, 538 So.2d 164 (La. 1988);
(4)The erroneous rulings of the trial court and the court of appeal will cause material injustice or significantly affect the public interest, if this court upholds the conviction and sentence in this case." [Doc. 12-1, Exhibit Z-7, p. 135]

application/memorandum in support. [Doc. 10-1, Exhibit A-6, pp. 101-102; Doc. 12-1, Exhibit Z-7, pp. 131-136[2]]

Writs were denied without comment by Louisiana's Supreme Court on January 25, 2013. *State of Louisiana ex rel. Rutherford Jones*, 2012-2025 (La 1/25/2013), 105 So.3d 713.

Petitioner filed the instant petition on March 4, 2013 raising the following claims: (1) Violation of the Fourteenth Amendment when the trial court allowed witness to testify "to a total case of misidentification;" (2) Violation of the Fourteenth Amendment when the trial court allowed principle witness to give false testimony; (3) Trial court erred in admitting hearsay testimony and trial counsel was ineffective for failing to object; (4) Ineffective assistance of counsel for failing to call defense witnesses to testify and for failing to prepare and investigate; and, (5) Insufficient evidence.

On June 10, 2013, this Court issued an order directing petitioner to file "all of the information needed for this Court to complete an initial review of his claims." *R. 7.* On August 11, 2014 petitioner submitted a memorandum and exhibits in response to the order. *R. 12.* Therein petitioner dismissed Claims 3 (admission of hearsay evidence) and 4 (ineffective assistance of counsel). [Doc. 12, p. 7]

Before the Court then are petitioner's three remaining claims for relief: (1) Violation of the Fourteenth Amendment when the trial court allowed witness to testify "to a total case of misidentification;" (2) Violation of the Fourteenth Amendment when the trial court allowed principle witness to give false testimony; and (5) Insufficiency of the evidence.

_____

[2] See Doc. 12-1, p. 134, Table of Contents, Appendix E. See also Doc. 10-1, Appendix A-6, L.S.P. postage receipt showing payment of $10.60 for sending writ application to the District Attorney and the Supreme Court on September 5, 2012.

*Law and Analysis*

### 1. Rule 4 Considerations

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." (See also *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999), "The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.' 28 U.S.C. foll. § 2254 Rule 4 Advisory committee Notes.")

A review of the petitioner's pleadings and exhibits establishes beyond any doubt that petitioner is not entitled to relief and his *habeas* petition should therefore be dismissed with prejudice in accordance with Rule 4.

### 2. Title 28 U.S.C. §2254(d) – Standard of Review

This *habeas* petition was filed pursuant to 28 U.S.C. §2254 and therefore the standard of review set forth in 28 U.S.C. §2254(d) controls. *Knox v. Johnson*, 224 F.3d 470, 476 (5th Cir.2000); *Orman v. Cain*, 228 F.3d 616, 619 (5th Cir.2000). AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403–04 (5th Cir.2000) citing *Teague v. Lane*, 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) (noting that AEDPA

"placed a new restriction on the power of federal courts to grant writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

(d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of § 2254(d) this court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden to prove that he is entitled to relief. *Ormon*, 228 F.3d at 619 citing *Williams*, 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134–35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and 'correct' error in state court proceedings, but must exercise a more limited review...." *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D.Md.2000). Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere

6

disagreement with the state court. *Montoya*, 226 F.3d at 404; *Orman*, 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740–41 (5th Cir.2000) citing *Williams*, 120 S.Ct. at 1523; *Montoya*, 226 F.3d at 403 – 04 citing *Williams*, 120 S.Ct. at 1523. "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Dowthitt*, 230 F.3d at 740 citing *Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt*, 230 F.3d at 741 citing *Williams*, 120 S.Ct. at 1523. The standard is one of objective reasonableness. *Montoya*, 226 F.3d at 404 citing *Williams*, 120 S.Ct. at 1521–22. A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly ... [r]ather, that application must also be unreasonable." *Williams*, 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt*, 230 F.3d at 741. Federal *habeas courts* presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. *Id.* Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the

facts in light of the record of the State court proceeding. *Id.* citing 28 U.S.C. § 2254(d)(2); *Knox*,

224 F.3d at 476 citing *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.2000).

### 3. Claims One, Two,  and Five – Misidentification, Perjury, and Sufficiency of the Evidence

Petitioner's first claim for relief may be paraphrased as follows – Petitioner's Fourteenth

Amendment Rights were violated when the trial court allowed Detective Jordan to testify "to a

total case of misidentification." [Doc. 1-1, p. 14; Doc. 12-1, p. 140] His second claim for relief

may be paraphrased as follows – Petitioner's Fourteenth Amendment Rights were violated when

the trial court allowed Detective Jordan "to give false testimony without correction" concerning

the identity of petitioner as the perpetrator of the crime. [Doc. 1-1, p. 25; Doc. 12-1, p. 152] His

fifth claim for relief raises the issue of insufficiency of the evidence to establish petitioner's

identity as the perpetrator of the crime. [Doc. 1-1, p. 38] Petitioner raised Claims One and Two

in his application for post-conviction relief in the District Court, the Court of Appeal, and the

Louisiana Supreme Court; he raised Claim One on direct appeal to the First Circuit Court of

Appeal, but he did not thereafter present the claim to the Louisiana Supreme Court on direct

review.  These three claims are virtually identical.[3]

When they were presented to the First Circuit Court of Appeals on direct review as an

Assignment of Error arguing insufficiency of the evidence, petitioner's claims were resolved as

follows:

In his first assignment of error, the defendant argues that the evidence was

---

[3] Indeed, as elsewhere noted by petitioner, the State, in its answer to the application for post-conviction relief noted, "Jones claims that he was misidentified by the undercover police officer that he sold cocaine to and that the undercover police officer gave false testimony. This claim is the same claim that Jones made on direct appeal to the First Circuit. It is, in essence, a sufficiency of the evidence or *Jackson v. Virginia* claim." [Doc. 12-1, pp. 85-86]

insufficient to support the guilty verdict. Specifically, the defendant contends that the State failed to prove his identity as the suspect involved in the drug transaction with Detective Jordan.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U .S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821(B); *State v. Ordodi*, 06-0207, p. 10 (La.11/29/06), 946 So.2d 654, 660; *State v. Mussall*, 523 So.2d 1305, 1308-09 (La.1988). The *Jackson* standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. *See State v. Patorno*, 01-2585, pp. 4-5 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144. Furthermore, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. <u>Positive identification by only one witness is sufficient to support a conviction. It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations.</u> *State v. Hughes*, 05-0992, pp. 5-6 (La.11/29/06), 943 So.2d 1047, 1051.

The defendant asserts that Detective Jordan's identification of him was unreliable because he has been bald for many years and the cocaine seller had hair on his head; his nickname is "Shine," yet the person who sold the cocaine was referred to as "Slim"; and all his front teeth are missing, yet Detective Jordan did not recall that the person who sold him drugs was "toothless."

<u>The testimony at trial established that Detective Jordan conducted a face-to-face drug transaction in daylight with excellent visibility with a person who Detective Jordan later identified as the defendant. About seven weeks after the drug buy, Detective Jordan identified the defendant in a six-person photographic lineup as the person who sold him crack cocaine. According to Detective Jordan and Lieutenant Anslum, who assembled the photographic lineup, Detective Jordan's identification of the defendant was immediate. Detective Jordan also identified the defendant in court as the person who sold him the drugs. When asked during direct examination if he was positive that it was the defendant who sold him the cocaine, Detective Jordan responded that "[w]ithout a doubt" it was the defendant. Detective Jordan testified that the defendant "stuck in [his] mind" because he had</u>

9

the worst smelling breath he had ever smelled on a human being in his life.

On cross-examination of Detective Jordan, defense counsel suggested that the video of the drug transaction showed the seller had hair on his head. Detective Jordan responded that the seller was wearing a hat. When asked if he could tell from the video if the seller had hair under his ball cap, Detective Jordan responded, "Yes, it looks like he does have at least patches of hair." On the cross-examination of Lieutenant White, he was shown the video of the drug buy and asked if the seller had hair on his head. Lieutenant White responded, "Appears to." Several pictures of the defendant were introduced into evidence. The pictures show the defendant is bald. Two of the pictures, which were the State's exhibits, were taken of the defendant weeks after the drug transaction with Detective Jordan. It is not clear when a third picture of the defendant, which was a defense exhibit, was taken, although it appears the defendant was in jail at the time.

Two witnesses for the defendant testified. Oralee Smith, the defendant's mother, testified that it had been over twenty years since the defendant had hair on his head. Betty Pesson, who worked for the St. Mary Parish Sheriff's Department, testified that over the past ten years of seeing the defendant coming into the station and being booked, she had never known him to have hair on his head. On cross-examination, Betty testified that the last time she saw the defendant being booked in jail was about ten years ago.

Our review of the video of the drug transaction revealed nothing about whether or not the seller was bald. The transaction was very brief, and the seller, who was wearing a baseball cap, appeared on camera a few times only momentarily. There were some views of the side of the seller's head as he turned, but because of poor video quality, the video does not clearly show whether the seller had hair on the sides of his head.

On cross-examination of Detective Jordan, defense counsel asked him if he recognized anything about the defendant's mouth. Detective Jordan did not remember anything in particular about his mouth. Defense counsel showed him the picture of the defendant smiling and asked, "Did you notice, you notice that he doesn't have any teeth in his mouth?" Detective Jordan replied that he thought the defendant did not have teeth in the lineup picture either. Defense counsel noted that Detective Jordan had not put anything in his notes about the defendant's teeth. Detective Jordan testified that the drug transaction took about twenty seconds. On redirect examination, Detective Jordan testified that, during the drug transaction, the defendant was not smiling showing his teeth, but was "kind of nervous" and "trying to be as quick as possible."

10

The CI and Lieutenant Anslum referred to the defendant as "Slim." Oralee Smith testified the defendant's nickname was "Shine" and that everyone called him that all his life. She stated that everyone in Amelia knew him as "Shine" and that he had never been called "Slim." She further testified that letters she wrote to the defendant while he was in jail were addressed, "Hey Shine."

The foregoing characteristics of the defendant were factual determinations based on witness credibility and the weighing of the evidence. We do not find irrational the jury's credibility calls and evidence weighing in regard to Detective Jordan's testimony and the evidence introduced at trial. The trier of fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witness. Despite the defendant's assertion of alleged discrepancies with his nickname and whether he was bald and toothless, Detective Jordan's testimony was not clearly unworthy of belief. *See State v. Bright*, 98-0398, pp. 23-24 (La.4/11/00), 776 So.2d 1134, 1148, post-conviction relief granted on other grounds, 02-2793 (La.5/25/04), 875 So.2d 37.

The jury heard all of the testimony and viewed all of the evidence presented to it at trial and, notwithstanding the alleged inconsistencies, the jury found the defendant guilty. When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. *State v. Taylor*, 97-2261, pp. 5-6 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. *See State v. Mitchell*, 99-3342, p. 8 (La.10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. *State v. Quinn*, 479 So.2d 592, 596 (La.App. 1 Cir.1985).

In finding the defendant guilty, it is clear the jury rejected the defense's theory of misidentification. A reasonable juror could have determined that the video of the drug transaction did not resolve whether or not the seller had patches of hair on the sides of his head, or that the seller did have hair and shaved it off, and that, in any event, Detective Jordan's testimony was credible enough to establish the defendant's guilt. A reasonable juror could have also determined from the evidence that the defendant clearly was not toothless. Thus, despite the hyperbolic descriptions of the defendant's oral condition (defense counsel suggested to Detective Jordan that the defendant did not have any teeth in his mouth, and the defendant in his appeal brief stated that all of his front teeth were missing and that he was "toothless"), the photographic evidence indicates the defendant had front

teeth. In Defendant's Exhibit 1, the defendant appeared to be missing two or three top teeth. In State's Exhibit 7, the defendant appeared to be missing a single top tooth. Further, the drug transaction was very brief, and the defendant barely spoke. Accordingly, a reasonable juror could have determined that nothing under these circumstances would have called to Detective Jordan's attention the defendant's teeth.

Finally, a reasonable juror could have determined that, while "Shine" may have been the defendant's actual nickname, the CI and detectives referred to the defendant as "Slim" because it is a colloquialism. It would not be uncommon to refer to a thin person as "Slim" regardless of his real name or actual nickname. The defendant's arrest record indicated the defendant was five feet, seven inches tall and 160 pounds with a thin build.

The State's evidence negated any reasonable probability that the defendant was not properly identified as the suspect selling crack cocaine to Detective Jordan. Detective Jordan identified the defendant in court as the person who sold him drugs and picked him from a photographic lineup. The testimony of a single undercover police officer is sufficient to convict a defendant charged with drug distribution. *State v. Conway*, 588 So.2d 1369, 1373 (La.App. 2 Cir.1991). *See State v. Christy*, 509 So.2d 829, 831 (La.App. 1 Cir.), writ denied, 513 So.2d 296 (La.1987). Furthermore, the guilty verdict returned in this case indicates the jury believed the testimony of the State's witnesses and rejected the defense's theory of misidentification. *See State v. Andrews*, 94-0842, p. 7 (La.App. 1 Cir. 5/5/95), 655 So.2d 448, 453.

After a thorough review of the record, we find that the evidence negates any reasonable probability of misidentification and supports the jury's verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of distribution of cocaine.

This assignment of error is without merit.

*State of Louisiana v. Rutherford Jones*, 2010 WL 3527547 at *1-*5. (Emphasis supplied)

In its response to petitioner's post-conviction claims, the State argued, "The defense in

this case was that Jones did not sell the cocaine and that he was not the person on the DVD

which recorded the transaction. The State put on compelling evidence that Jones did, in fact, sell

12

cocaine and was recorded doing so on the DVD. The evidence at trial showed first, the transaction took place in day light and was witnessed by Detective Jordan, who is a 25 year veteran narcotics agent. Second, Detective Jordan was able to view the face of the person who sold him the cocaine (Jones) from only 12-14 inches away in broad day light. Third, Detective Jordan was able to pick Jones out of a photo array. Fourth, the whole transaction was recorded on DVD and played to the jury ... The jury resolved any conflict as to identity in favor of the State and the First Circuit and the Louisiana Supreme Court considered this claim under *Jackson v. Virginia* standard and found sufficient evidence to support the conviction. As a result, Claims (1) and (2) should be denied on the merits." [Doc. 12-1, p. 86] (Emphasis supplied)

The trial court initially granted the State's Motion to Dismiss and dismissed petitioner's application "on procedural grounds" and "on the merits." [Doc. 12-1, p. 95] Thereafter, on May 17, 2012, the application was simply "denied" upon consideration of "the Application... and the response thereto..." [Doc. 12-1, p. 96] For the purposes of this report, it will be presumed that the District Court's dismissal was on the merits.[4]  Therefore, in order to prevail, petitioner must establish that the State courts' adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[4] The State urged dismissal on procedural grounds. First, the State noted that the application was not notarized as required by La. C.Cr.P. art. 926(C).  In his brief before this court, petitioner admits that his application was not notarized, however, he claims that he was in lock down when his application was filed and as such, he did not have access to a notary. [Doc. 12, pp. 9-10] Second, the State, citing La. C.Cr.P. art. 930.4(A) urged dismissal because petitioner's sufficiency of the evidence claims were "fully litigated" on appeal.  However, art. 930.4(A) is not a procedural bar in the traditional sense. *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir.1994) ("The bar imposed by [Louisiana Code of Criminal Procedure] article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits.").

Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In denying relief on petitioner's sufficiency of the evidence claim, the Louisiana courts applied the appropriate standard as set forth in *Jackson v. Virginia*, "The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U .S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). With regard to a claim of insufficiency of the evidence based on a claim of misidentification, the Courts likewise applied the appropriate standard noting that even the positive identification by a single witness is sufficient to support a conviction since it is the province of the jury to weigh the respective credibilities of the witnesses; and, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *See Schlup v. Delo,* 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, 24 F.3d 240; No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the *Jackson* standard for *habeas* relief.)

While the entire State court record is not before the Court at this time, petitioner has quoted excerpts from Officer Jordan's testimony and the testimony of the other witnesses and those extended quotes clearly support Jordan's  identification of the petitioner as the perpetrator

14

of the offense. The quoted portions of the transcript also establish that the jury was required to make a credibility determination and their verdict clearly reflects that they found Jordan's testimony to be more credible than the testimony of the petitioner's witnesses. Those excerpts also establish that the evidence taken in the light most favorable to the prosecution established that petitioner was the perpetrator of the crime.

Petitioner, of course, claims that Jordan's testimony was false. He claims too that the State knew it to be false, yet nevertheless allowed the testimony to be placed before the jury. It is well settled that the prosecution may not knowingly use perjured testimony or allow perjured testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). However, contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between reports, written statements and the trial testimony of prosecution witnesses do not, standing alone, establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir.1990) (holding that contradictory testimony from witnesses or inconsistencies in a witness's testimony at trial are to be resolved by the trier of fact and do not suffice to establish that certain testimony was perjured).

In summary, the law is clear – claims of insufficient evidence are to be analyzed pursuant to the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.  Furthermore, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a

15

rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)) (emphasis added); see also *Cavazos v. Smith*, 132 S.Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). Finally, since this claim arises in the context of a *habeas corpus* proceeding,  the state court's decision applying the already deferential *Jackson* standard must be assessed under the strict and narrow standards of review mandated by the AEDPA.  In other words, the standard is in fact "twice-deferential." *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012); see also *Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).

Thus, when the evidence in this case is viewed in the light most favorable to the prosecution, it does not appear that petitioner's guilty verdict was irrational. Since petitioner has not demonstrated that the state courts' decisions rejecting his claim were contrary to, or involved an unreasonable applications of, clearly established federal law, as determined by the Supreme Court of the United States, he is not eligible for *habeas corpus* relief. Therefore,

**IT IS RECOMMENDED** that *pro se* petitioner, Rutherford Jones', petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** on the merits.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response

16

to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

**THUS DONE AND SIGNED** in Chambers, Lafayette, Louisiana, this 8th day of October, 2015.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**